*12*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA

v.

MARK STEVEN KHOURY, D.P.M.

Defendant.

_____/

Case:1:20-cr-20454
Judge: Ludington, Thomas L.
MJ: Morris, Patricia T.
Filed: 09-23-2020 At 12:10 PM
INDI USA V. SEALED MATTER (DA)

VIO:  18 U.S.C. § 1347
      18 U.S.C. § 982

## **INDICTMENT**

**THE GRAND JURY CHARGES:**

## **GENERAL ALLEGATIONS**

At all times relevant to this Indictment:

### **The Medicare Program**

1.      The Medicare program ("Medicare") was a federal health care program

providing benefits to persons who were the age of 65 years, or older, or disabled.

Medicare was administered by the Centers for Medicare and Medicaid Services

("CMS"), a federal agency under the United States Department of Health and

Human Services. The benefits available under Medicare were governed by federal

statutes and regulations.  Individuals who received benefits under Medicare were

referred to as Medicare "beneficiaries."

2.     Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), and a "Federal health care program," as defined by Title 42, United States Code, Section 1320a-7b(f).

3.     Medicare was divided into four parts which helped cover specific services: hospital insurance (Part A), medical insurance (Part B), Medicare Advantage (Part C), and prescription drug benefits (Part D).

4.     Specifically, Medicare Part B covered medically necessary physician services and outpatient care, including outpatient podiatric services.

5.     CMS contracted with various companies to receive, adjudicate, process, and pay Part B claims, including claims for physician services. Wisconsin Physicians Service ("WPS") was the CMS contracted carrier for Medicare Part B in the state of Michigan. AdvanceMed was the Zone Program Integrity Contractor ("ZPIC") in the state of Michigan for Medicare since May 2015. The ZPIC was the contractor charged with investigating fraud, waste and abuse.

6.     Physicians, clinics, and other health care providers that provided services to Medicare beneficiaries were able to apply for and obtain a Medicare "provider number." A health care provider who was issued a Medicare provider number was able to file claims with Medicare to provide reimbursement for services provided to beneficiaries. A Medicare claim was required to set forth, among other things, the beneficiary's name, the date the services were provided, the cost of the

services, and the name and identification number of the physician or other health care provider who had ordered the services.

7.      By becoming a participating provider in Medicare, enrolled providers agreed to abide by the policies and procedures, rules, and regulations governing reimbursement. In order to receive Medicare funds, enrolled providers, together with their authorized agents, employees, and contractors, were required to abide by all the provisions of the Social Security Act, the regulations promulgated under the Act, and applicable policies, procedures, rules, and regulations issued by CMS and its authorized agents and contractors.

8.      Health care providers were given, and provided with online access to, Medicare manuals and services bulletins describing proper billing procedures and billing rules and regulations.

9.      Medicare Part B regulations required health care providers enrolled with Medicare to maintain complete and accurate medical records reflecting the medical assessment and diagnoses of their patients, as well as records documenting actual treatment of the patients to whom services were provided and for whom claims for payment were submitted by the physician. These records were required to be sufficient to permit Medicare, through WPS and other contractors, to review the appropriateness of Medicare payments made to the health care provider under the Part B program.

10.     Providers could only submit claims to Medicare for services that they rendered and that were medically necessary.

11.     Medicare only covered services that were both medically necessary and rendered.

### Medical Coding

12.     The American Medical Association assigned and published numeric codes, known as the Current Procedural Terminology ("CPT") and Health Care Procedure Common Coding System ("HCPCS") codes.  The codes were a systematic listing, or universal language, used to describe the procedures and services performed by health care providers.

13.     The procedures and services represented by the CPT and HCPCS codes were health care benefits, items, and services within the meaning of 18 U.S.C. § 24(b).  Health care providers used CPT and HCPCS codes to describe the services rendered in their claims for reimbursement to health care benefit programs.

14.     Health care benefit programs, including Medicare, used these codes to understand and evaluate the claims submitted by providers and to decide whether to issue or deny payment. Each health care benefit program established a fee or reimbursement level for each service described by a CPT or HCPCS code.

15.     CPT Code 11730 represented a nail avulsion procedure. This procedure was the surgical removal of an offending nail from the nail bed, extending from the tip of the nail back to the nail matrix.

### The Physician Services Business

16.     M. Steven Khoury, D.P.M., P.L.L.C. ("Khoury, PLLC") was a Michigan professional limited liability company, organized in or around June 1999, doing business at 150 Millwood Street, Suite A, Caro, Michigan 48723. Khoury, PLLC was enrolled as a participating provider with Medicare and submitted claims directly to Medicare since on or about November 15, 2006.

### The Defendant

17.     Defendant MARK STEVEN KHOURY, D.P.M., a resident of Oakland County, Michigan, was a licensed podiatrist, who was enrolled as a participating provider with Medicare. MARK STEVEN KHOURY, D.P.M., owned and operated Khoury, PLLC and purportedly provided podiatric services to patients, including Medicare beneficiaries.

### COUNTS 1-3
### (18 U.S.C. § 1347 - Health Care Fraud)

18.     Paragraphs 1 through 17 of the General Allegations section of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

5

19.     From in or around January 2010 and continuing through in or around March 2018, in the Eastern District of Michigan and elsewhere, the defendant, MARK STEVEN KHOURY, D.P.M., in connection with the delivery of, and payment for, health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud Medicare, a federal health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), and to obtain by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of, and payment for, health care benefits, items, and services.

## Purpose of the Scheme and Artifice

20.     It was the purpose of the scheme to defraud for MARK STEVEN KHOURY, D.P.M., to unlawfully enrich himself, by, among other things: (a) submitting and causing the submission of false and fraudulent Medicare claims for services that were not medically necessary, not eligible for Medicare reimbursement, and not rendered as represented; (b) concealing the submission of false and fraudulent claims to Medicare and receipt and transfer of fraud proceeds; and (c) diverting fraud proceeds for his personal use and benefit.

**The Scheme and Artifice**

21.     On or about November 15, 2006, MARK STEVEN KHOURY, D.P.M.,
certified to Medicare that he would comply with all Medicare rules and regulations.
For all times during the charged period, MARK STEVEN KHOURY, D.P.M., was
a Medicare provider and was required to abide by all Medicare rules and regulations
and federal laws, including that he would not knowingly present or cause to be
presented a false and fraudulent claim for payment by Medicare.

22.     Thereafter, MARK STEVEN KHOURY, D.P.M., devised and engaged
in a scheme to submit claims to Medicare for nail avulsion procedures under CPT
Code 11730 that were not medically necessary, not rendered, and not eligible for
Medicare reimbursement.

23.     MARK STEVEN KHOURY, D.P.M. would routinely trim his patients'
toenails, but then submit, or cause the submission of, claims to Medicare purporting
that he performed a nail avulsion procedure under CPT Code 11730.

24.     From in or around January 2010 through in or around March 2018,
MARK STEVEN KHOURY, D.P.M., repeatedly submitted, and caused the
submission of, false and fraudulent claims to Medicare for nail avulsion procedures
under CPT Code 11730 that were not medically necessary, were not rendered, and
were otherwise not reimbursable.

25.    From in or around January 2010 through in or around March 2018, MARK STEVEN KHOURY, D.P.M., submitted, and caused to be submitted, approximately $2 million in claims to Medicare for nail avulsion procedures under CPT Code 11730.

### Acts in Execution of the Scheme to Defraud

26.    On or about the dates specified below, in Tuscola County, in the Eastern District of Michigan, and elsewhere, MARK STEVEN KHOURY, D.P.M., submitted and caused to be submitted the following false and fraudulent claims to Medicare for nail avulsion procedures that were not medically necessary, were not rendered, and were not otherwise reimbursable, in an attempt to execute, and in execution of the scheme as described in paragraphs 21 through 25, with each execution set forth below forming a separate count:

| Count | Beneficiary | Approx. Date of Service | Approx. Date of Claim Submission | Description of Items Billed | Approx. Amount Billed |
|-------|-------------|-------------------------|----------------------------------|----------------------------|-----------------------|
| 1 | M.M. | 11/7/2017 | 11/10/17 | Separation of nail plate from nail bed (11730) | $125.00 |
| 2 | P.H. | 12/19/2017 | 12/26/2017 | Separation of nail plate from nail bed (11730) | $125.00 |
| 3 | D.L. | 12/20/2017 | 12/26/2017 | Separation of nail plate from nail bed (11730) | $125.00 |

In violation of Title 18, United States Code, Section 1347.

## FORFEITURE ALLEGATIONS
(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c); 18 U.S.C. § 982(a)(7)—
Criminal Forfeiture)

27.    The above allegations contained in this Indictment are incorporated by reference as if set forth fully herein for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(7), and Title 28, United States Code, Section 2461(c).

28.    Upon being convicted of the offense(s) in violation of Title 18, United States Code, Section 1347, as set forth in Counts 1 through 3 of this Indictment, MARK STEVEN KHOURY, D.P.M. shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense(s), pursuant to 18 U.S.C. § 982(a)(7) and 18 U.S.C. § 981(a)(1)(C), as incorporated by 28 U.S.C. § 2461(c).

28.    Money Judgment:  Such property includes, but is not limited to, a forfeiture money judgment against MARK STEVEN KHOURY, D.P.M. in an amount to be determined, representing the total value of all property subject to forfeiture as a result of his violation(s) of 18 U.S.C. § 1347, as alleged in Counts 1 through 3 of this Indictment.

29.   <u>Substitute Assets</u>:  If the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

    a)  cannot be located upon the exercise of due diligence;

    b)  has been transferred or sold to, or deposited with, a third party;

    c)  has been placed beyond the jurisdiction of the Court;

    d)  has been substantially diminished in value; or

    e)  has been commingled with other property that cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p) as incorporated by 18 U.S.C. § 982(b) and 28 U.S.C. § 2461(c), to seek to forfeit any other property of the defendant up to the value of the forfeitable property described above.

THIS IS A TRUE BILL.

<u> s/Grand Jury Foreperson</u>
Grand Jury Foreperson

MATTHEW SCHNEIDER
UNITED STATES ATTORNEY

DANIEL KAHN
ACTING CHIEF, FRAUD SECTION
CRIMINAL DIVISION
U.S. DEPARTMENT OF JUSTICE


REGINA R. MCCULLOUGH
Chief, Health Care Fraud Unit
Assistant United States Attorney


MALISA DUBAL
Assistant Chief, Fraud Section
U.S. Department of Justice


s/Steven Scott
STEVEN SCOTT
Trial Attorney
Criminal Division, Fraud Section
U.S. Department of Justice
1400 New York Avenue, N.W.,
Washington, D.C. 20005
(202) 262-6763
Steven.scott@usdoj.gov


Dated: September 23, 2020

| United States District Court<br>Eastern District of Michigan | **Criminal Case Cove** | Case:1:20-cr-20454<br>Judge: Ludington, Thomas L.<br>MJ: Morris, Patricia T.<br>Filed: 09-23-2020 At 12:10 PM<br>INDI USA V. SEALED MATTER (DA) |
|---|---|---|

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to compl

| Companion Case Information | Companion Case Number: |
|---|---|
| This may be a companion case based upon LCrR 57.10 (b)(4)[1]: | Judge Assigned: |
| ☐ Yes    ☒ No | AUSA's Initials: |

**Case Title:** USA v.  MARK STEVEN KHOURY, D.P.M.

**County where offense occurred :** Tuscola County

**Check One:**    ☒ Felony        ☐ Misdemeanor        ☐ Petty

✓ Indictment/____Information --- **no** prior complaint.
____Indictment/____Information --- based upon prior complaint [**Case number:**                    ]
____Indictment/____Information --- based upon LCrR 57.10 (d) **[Complete Superseding section below].**

**Superseding Case Information**

**Superseding to Case No:** _____    **Judge:** _____

☐ Corrects errors; no additional charges or defendants.
☐ Involves, for plea purposes, different charges or adds counts.
☐ Embraces same subject matter but adds the additional defendants or charges below:

| **Defendant name** | **Charges** | **Prior Complaint (if applicable)** |
|---|---|---|

**Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.**

September 23, 2020
Date

Steven Scott, Trial Attorney
211 West Fort Street, Detroit, MI 48226
Phone: (202) 262-6763
Fax:   (313) 226-0816
E-Mail address: Steven.Scott@usdoj.gov
Attorney Bar #: IL 6306957

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, or (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.